### KII TANAKA v. WEEDIN, Commissioner of Immigration.

(Circuit Court of Appeals, Ninth Circuit. November 15, 1926. Rehearing Denied December 20, 1926.)

No. 4738.

**1. Aliens ⬦54(9)—Evidence held to sustain order for deportation of woman assisting a prostitute.**

Testimony *held* sufficient to support an order for deportation of a Japanese woman on the ground of assisting a prostitute.

**2. Aliens ⬦54(9)—Prostitute's testimony should be received with caution, in proceeding to deport for assisting prostitute.**

Testimony of an admitted prostitute given in a deportation proceeding, though to be received with caution, is not to be arbitrarily rejected.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Petition by Kii Tanaka against Luther Weedin, Commissioner of Immigration at the Port of Seattle, Washington, for writ of habeas corpus. From a judgment dismissing the petition, she appeals. Affirmed.

Fred C. Brown and Van C. Griffin, both of Seattle, Wash., for appellant.

Thos. P. Revelle, U. S. Atty., and Donald G. Graham, Asst. U. S. Atty., both of Seattle, Wash. (C. T. McKinney, Asst. U. S. Atty., of Seattle, Wash., of counsel), for appellee.

Before RUDKIN, Circuit Judge, and DIETRICH and KERRIGAN, District Judges.

DIETRICH, District Judge. Being held under a warrant of deportation, appellant, a Japanese woman, petitioned for a writ of habeas corpus. From a judgment dismissing the writ she appeals.

[1] The grounds of the order of deportation were that appellant was found (1) managing a house of prostitution; and (2) assisting a prostitute. In form and procedure the hearing accorded by the immigration officials was fair, and the only real question is whether the evidence is sufficient to support the findings.

Appellant testified that she was born in Japan in 1885, and in 1907 she, with her husband, came to the United States, where she has continued to reside up to the present time, with the exception of two visits to Japan, each covering about a year. In 1919, the occasion of her second visit, her husband went with her to Japan where he has continued to reside, with their three children, two of whom were born in this country and one in Japan. The reason she gives for her husband's return to the old country is that he was afflicted with rheumatism.

Appellant returned from her last visit in 1920, and in the following year she leased the Le Roy Hotel or rooming house at Seattle, which she continued to operate up to the time of her arrest. She had run this hotel before she went to Japan, and the furniture belonged to her. With few exceptions her patrons were men employed in the logging camps. There were 42 rooms, which she rented at from 35 cents to $1 per day. She herself did most of the chamber work, and had in her employ an old man who acted as a sort of janitor and watchman, and a woman who was on duty at night as clerk to assign the rooms as men came in and to collect the rental charges.

At the time in question this night clerk was one Georgia Bratten, admittedly a prostitute of the most pronounced type. She testified at the time of the arrest of herself and appellant that she had been employed at the hotel, as such night clerk, for about four weeks. During the hours of the night when, ostensibly at least, she was on duty as night clerk, she solicited men to come to her room in the hotel; this with great frequency. She further testified that she was to get and got no compensation from the appellant for her services, but, on the other hand, paid at the rate of three dollars per day for her room; and that when she went to work it was understood with appellant that she was to practice prostitution. All of this appellant denied, and to the contrary testified that she did not know of any immoral practices, and instead of receiving $3 from the woman for her room she paid her $14 a week for her services at the desk. She also produced witnesses who testified that they had never heard anything bad about her, and that the hotel bore

a good reputation. She was also in a manner corroborated by her hotel register and account book.

[2] In effect appellant's contention, and her only contention, is that the testimony of a prostitute is incredible and should be denied probative value. In this view, we are unable to concur. It may be conceded that such testimony is not wholly trustworthy and should be scrutinized carefully and received with caution. But those are considerations going to its weight and not to its competency. A prostitute may speak the truth, and in the absence of a motive or an incentive for falsifying, it would be arbitrary to reject her testimony, provided it is not inconsistent in itself or improbable or subject to some other consideration affecting its credibility. In a criminal case, requiring proof beyond a reasonable doubt, it might be very dangerous to predicate a conviction upon it alone, but this is not a criminal case.

Apparently the witness had no feeling of ill will toward appellant. We may conjecture a desire to ingratiate herself with the public officers, but neither that nor any other motive of self-interest is disclosed in the testimony. Upon the witness stand, she seems to have maintained an attitude of careless, if not callous, unconcern, a listless indifference.

Upon the whole we cannot say that it was unreasonable for the officers to believe her, and therefore we cannot with propriety disturb their findings.

The judgment will be affirmed.